UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLTON BYRD,

                              Petitioner,                    09cv8536 (NSR)(LMS)

          - against -                                        REPORT AND
                                                             RECOMMENDATION

ROBERT ERCOLE, Superintendent,

                              Respondent.


TO: THE HONORABLE NELSON S. ROMÁN, U.S.D.J.[1]

          On September 14, 2009, Petitioner Carlton Byrd, proceeding pro se, filed a habeas

petition pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his 2006 state court

conviction for one count of murder in the second degree and one count of criminal possession of

a weapon in the second degree. Pet. 1, D.E. 1.[2]  On August 23, 2006, Petitioner was sentenced to

an indeterminate term of 25 years to life on his conviction of the crime of murder in the second

---

[1] By order dated December 22, 2009, this matter was referred to me by the Honorable
Cathy Seibel, U.S.D.J., to whom the matter was assigned.  Order of Reference, Dec. 22, 2009,
Docket Entry (herein, "D.E.") 5.  This matter was later reassigned to the Honorable Edgardo
Ramos, U.S.D.J. Notice of Case Reassignment, Jan. 5, 2012, D.E. 19.  Thereafter, the matter
was reassigned to Your Honor.  Notice of Case Reassignment, July 12, 2013.

[2] Respondent's Amended Affidavit in Opposition to Petitioner for Writ of Habeas Corpus
states that Petitioner filed his first petition for writ of habeas corpus on September 21, 2009.
Resp't Am. Aff. 11, May 30, 2013, D.E. 31.  However, September 21, 2009, is the date on which
the Southern District of New York's Pro Se Office received the petition. Pet. 1, D.E. 1.
Petitioner signed and dated the petition September 14, 2009, as the date on which he delivered
the petition to the prison authorities.  Thus, September 14, 2009, is the filing date for the
petition.  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (finding that the "prison mailbox
rule" applies to pro se habeas corpus petitions).

degree and a determinate term of imprisonment of fifteen years, to be followed by a period of

five years' post-release supervision, on the conviction of criminal possession of a weapon in the

second degree.  The sentences were to run concurrently.  Resp't's Am. Aff. 9, D.E. 31.

Following the Court's granting of a stay and a request to move to amend, Petitioner filed an

amended petition on March 29, 2013, and an amended memorandum of law on July 8, 2013.

Am. Pet., Mar. 29, 2013, D.E. 30; Am. Mem., July 8, 2013, D.E. 35.  Petitioner asserts the

following three grounds for habeas relief: (1) the state trial court committed reversible error by

finding that witness Preston Thomas was not an agent of law enforcement, thus violating

Petitioner's right to counsel by admitting testimony of Petitioner's self-incriminating statements

made to Preston Thomas; (2) Petitioner was denied effective assistance of trial counsel; and (3)

Petitioner was denied effective assistance of appellate counsel.  Am. Pet. 4.

      For the following reasons, I conclude, and respectfully recommend that Your Honor

should conclude, that the instant petition should be dismissed in its entirety.

## I. BACKGROUND

**A.**      <u>The Crime</u>

      Petitioner and Kaream Foreman both lived on Cliff Street in Yonkers and sold drugs.

Trial Transcript (herein, "T"): 1031-32, 1046, 1214-16, 1364-65.

      On the evening of October 5, 2005, at approximately 9:00 P.M., Petitioner shot Foreman

in the back of the head as Foreman was walking away from an argument between the two men.

Richard Sanquentin, a witness who did not know Petitioner or Foreman, was seated in his car

across the street when he saw Petitioner raise a gun and shoot Foreman.  T: 933-41, 956-57, 968-

70, 981-84.  Jennara Marrow, a witness who knew Petitioner and Foreman, testified that she had

heard Petitioner say, "Nigger didn't I tell you to stay off my block," as Petitioner walked toward

Foreman with a gun in his hand. Foreman did not respond. Petitioner repeated his question, to which Foreman responded, "Yeah, whatever." Marrow saw Petitioner raise his gun, she closed her eyes, and she heard a gunshot. She then saw Foreman on the ground and Petitioner standing over him. T: 1214-16, 1228-29.

A neighborhood resident, Jessica Chambliss, testified that she saw Petitioner walking toward Foreman with something in his hand. Her back was turned when she heard the sound of a gunshot. She heard Petitioner say, "Fuck that nigger. He had to go." T: 989-93, 1013-16.

Earlier, at approximately 6:30 P.M. that same evening, Sammy Anderson had confronted Foreman on Cliff Street. T: 1216-20, 1241-43. Anderson asked Foreman, "Why you running your mouth?" T: 1219. The two men engaged in a fight until neighborhood residents separated them. T: 1219-21. Anderson retreated across the street, and Foreman yelled, "Y'all niggers hate me on this block because I hustle." T: 1220. Petitioner, who was across the street, asked Foreman, "Who you talking to?" Id. Foreman replied, "If you think I'm talking to you, then I'm talking to you then." Id. Petitioner walked toward Foreman, swung his fists at him, and tripped him. Id. Foreman fell to the ground, and Petitioner kicked him. T: 1221-22. Anderson came and stabbed Foreman with a box cutter. T: 1246-47. Anderson told Foreman not to return to the block and threatened that he would rob Foreman every time Foreman returned. T: 1223. Petitioner said to Foreman, "Don't come back to the block, I'm going to pop you nigger." Id.

Foreman went to the hospital after the altercation with Anderson, and he returned home at around 9:00 P.M. T: 1223-25, 1480-81. He then walked down Cliff Street toward a store. T: 1225-26. Petitioner approached Foreman and the two began arguing. T: 1228. At this point, as Foreman walked away, Petitioner shot Foreman in the back of the head, as described above. Foreman died as a result of the gunshot wound in his head. T: 1161-62, 1169. Petitioner

3

proceeded to walk several blocks away, took off his shirt, and wiped his hands and face with it. T: 1023-25, 1291-95, 1485-89.  He returned to Cliff Street, and the police took him into custody and later confiscated his shirt.  T: 1042-43, 1082-83, 1488, 1654.  DNA testing of the blood stains on the shirt matched Foreman's DNA profile.  T: 1529-35.

Detective James McCabe read Petitioner his Miranda rights.  T: 1356-59.  Petitioner told McCabe that he was talking to Foreman shortly before Foreman was shot.  T: 1362.  Petitioner stated that he walked to Cliff Street while Foreman walked to the store.  T: 1362-63.  Petitioner denied shooting Foreman and said he was a distance away when Foreman was shot.  T: 1363-64. Defense witnesses claimed that Petitioner was not the shooter.  T: 1633-35, 1664-66, 1687-89, 1702, 1718-20, 1754, 1770-71.

B.      **Relevant Procedural History**

On October 17, 2005, a grand jury returned a true bill charging Petitioner with the crimes of murder in the second degree (N.Y. Penal Law § 125.25(1)), criminal possession in the second, third, and fourth degrees (N.Y. Penal Law §§ 265.01(2), 265.02(4), 265.03(2)), and assault in the second degree (N.Y. Penal Law § 120.05(2)).  Resp't's Am. Aff. 4.  The indictment was filed on October 27, 2005.  Id.  Trial before the County Court, Westchester County (J. Bellantoni), began on May 30, 2006.  Id. at 6.  Near the end of the People's case, the prosecution sought to introduce testimony by Westchester County Jail inmate Preston Thomas about statements Petitioner made while incarcerated with Thomas.  Id.  Thomas told law enforcement agents that he had overheard Petitioner making statements about the trial and admissions about the crimes for which Petitioner was charged.  Id.  The state trial court held a hearing pursuant to Massiah v. United States, 377 U.S. 201 (1964), to determine whether the introduction of Thomas's testimony would violate Petitioner's Sixth Amendment right to counsel.  Id.  Judge Bellantoni found that Thomas was not

acting as an agent of the police, and thus allowed Thomas's testimony.  Jury Trial Transcript for
Massiah Hearing (herein, "Massiah Hearing Transcript"): 1567, Resp't's Ex. G.[3]

On June 21, 2006, the jury returned a verdict finding Petitioner guilty of the crimes of
murder in the second degree and criminal possession of a weapon in the second degree and not
guilty of the crime of assault in the second degree.  Resp't's Am. Aff. 9.  A sentencing hearing
took place on August 23, 2006.  Sentencing Hearing Transcript: 1.

Thereafter, Petitioner filed a direct appeal to the Supreme Court of the State of New
York, Appellate Division, Second Department.  In his brief, submitted by appellate counsel John
R. Lewis on Petitioner's behalf, Petitioner asserted that "[t]he trial court committed reversible
error when it found informant Preston Thomas not to be an agent of law enforcement, and
therefore admitted into evidence extremely self-incriminating statements allegedly made by
appellant outside of the presence of his counsel."  Appellant's Br. 18, Resp't's Ex. H.  Petitioner
claimed that admitting any statement made by a defendant to an agent of law enforcement
outside of the presence of defense counsel violated the defendant's Sixth Amendment right to
counsel.  Id.  Petitioner further argued that law enforcement solicited Thomas's information
about Petitioner's self-incriminating statements, and thus Thomas was an agent of law
enforcement.  Id. at 20.  Petitioner argued that, even if trial counsel did not preserve this claim
for appeal, the Appellate Division should exercise its discretion to rule on this claim in the
interests of justice because it involved a fundamental constitutional right.  Id. at 25.  Finally,
Petitioner argued that trial counsel's failure to object to the admissibility of Thomas's testimony
constituted ineffective assistance of counsel.  Id. at 26.

---

[3] Herein, "Resp't's Ex." refers to an exhibit attached to Respondent's Amended Memorandum of
Law, May 20, 2013, D.E. 32.

The Appellate Division affirmed the judgment. <u>People v. Byrd</u>, 53 AD3d 622 (2d Dept 2008). The Appellate Division found that Petitioner's claim that Thomas's testimony was admitted in error was without merit and that Petitioner was not denied effective assistance of counsel. <u>Id.</u>

Petitioner sought leave to appeal therefrom in an application dated August 11, 2008, to the Court of Appeals. Appellant's Appl., Resp't's Ex. K. Petitioner included in his application the <u>Massiah</u> claim raised before the Appellate Division but abandoned his ineffective assistance of trial counsel claim. <u>Id.</u> at 9 n.3. The Court of Appeals denied Petitioner's application on October 23, 2008. <u>People v. Byrd</u>, 11 NY3d 830 (2008). The one year within which Petitioner must have filed his habeas corpus petition expired January 21, 2010.

On September 14, 2009, Petitioner <u>pro se</u> filed a petition for writ of habeas corpus. Pet., D.E. 1. Petitioner included in his petition the same claims he made on direct appeal in state court by attaching to his petition a copy of the arguments he made in his appellate brief. <u>Id.</u> By letter dated November 19, 2009, Respondent requested an extension of time to answer the petition. Resp't's Letter, Nov. 19, 2009, D.E. 3. The Court granted Respondent's request and extended Respondent's deadline to answer to December 28, 2009. Endorsed Letter, Nov. 23, 2009, D.E. 3. By letter dated December 13, 2009, Petitioner requested that his petition be held in abeyance so that he could file in state court a § 440.10 motion to vacate the judgment of conviction and a petition for writ of error <u>coram</u> <u>nobis</u>, in addition to a jurisdictional statement to the Court of Appeals. Pet'r's Letter, Dec. 13, 2009, D.E. 10. Petitioner also filed an application for appointment of counsel. Pet'r's Letter, Dec. 13, 2009, D.E. 13. Respondent filed an affidavit and memorandum of law in opposition to the petition for writ of habeas corpus. Resp't's Aff., Dec. 28, 2009, D.E. 6; Resp't's Mem., Dec. 28, 2009, D.E. 7. Respondent also filed a letter

objecting to Petitioner's request to hold the petition in abeyance.  Resp't's Letter, Jan. 14, 2010,

D.E. 16.  By letter dated January 5, 2010, Petitioner requested an extension of time to file his

reply brief to Respondent's opposition to the petition.  Pet'r's Letter, Jan. 5, 2010, D.E. 15.

      After a status conference held by this Court on June 20, 2011, Petitioner submitted a

letter requesting that the petition be held in abeyance to allow him to pursue unexhausted claims

in state court, and also requesting that this Court provide Petitioner with his trial transcripts.

Pet'r's Letter, June 20, 2011, D.E. 12.  This Court denied without prejudice Petitioner's

application for a copy of his trial transcripts and application for the appointment of counsel.

Order, Sept. 7, 2011, D.E. 14.  By Order dated September 9, 2011, this Court directed Petitioner

to provide the Court, by letter, with more detailed arguments as to the nature of his proposed

unexhausted claims and why Petitioner had failed to bring the unexhausted claims sooner, either

by motion in state court or by inclusion in his original petition.  Order, Sept. 9, 2011, D.E. 17.

This Court declined to apply the factors set forth in Rhines v. Weber, 544 U.S. 269, 276-77

(2005), to determine whether a stay was appropriate because the petition was not mixed—it did

not contain both exhausted and unexhausted claims.  Order, Sept. 9, 2011, D.E. 17.  The habeas

petition contained two claims, both of which were raised on direct appeal in state court.

Compare Pet. 7-18, with Appellant's Br. 18-29, Resp't's Ex. M.

      Thereafter, Petitioner filed a letter stating that the unexhausted claims relate to the

original petition and that he wished to challenge appellate counsel's failure to brief "a potential

meritorious claim that the prosecutor vouched for the credibility of its witness' [sic] in an

unreasonable manner . . . ."  Pet'r's Letter, Oct. 5, 2011, D.E. 18.  Petitioner's letter also appeared

to be making the claim that his unexhausted claims included a challenge regarding trial counsel's

performance during the Massiah hearing.  Id.  Petitioner again requested a copy of his trial

transcripts. Id. Respondent opposed Petitioner's requests. Resp't's Letter, Oct. 19, 2011, D.E. 20. Regarding the ineffective assistance of trial counsel claim, Respondent argued, inter alia, that the stay should be denied because it would have been futile for Petitioner to raise that claim in state court. Id. at 2. Respondent argued that Petitioner had raised this claim on direct appeal and therefore could not bring the claim again on a § 440.10 motion. Id. Regarding the ineffective assistance of appellate counsel claim, Respondent argued, inter alia, that the claim was time-barred and did not relate back to the timely filed habeas petition. Id. Regarding Petitioner's request for transcripts, Respondent argued that a copy of the transcript had already been provided to Petitioner as Exhibit G in Respondent's Memorandum of Law filed on December 28, 2009, D.E. 7.

By Order dated February 17, 2012, this Court concluded that Petitioner was not time-barred from making his new claims because Petitioner had presented his request to stay his petition prior to the expiration of the statute of limitations. Order, Feb. 17, 2012, D.E. 21. With respect to Petitioner's request to make his ineffective assistance of trial counsel claim pursuant to N.Y. Crim. Proc. L. § 440.10, that request was denied as Petitioner raised that claim on direct appeal and the Appellate Division denied it on the merits. Order, Feb. 17, 2012, at 3-4. However, the Court granted Petitioner a stay of thirty days to file his petition for writ of error coram nobis for the purpose of pursuing his claim of ineffective assistance of appellate counsel. Id. at 5. The Court ordered that should Petitioner timely file his petition for writ of error coram nobis, the stay of the habeas petition would remain in effect until thirty days after a decision was issued on the state court petition. Id. If Petitioner failed to timely file his state court petition, the stay of the habeas petition would be lifted immediately. Id. The Court denied Petitioner's request for copies of his trial transcripts other than a copy of the Massiah hearing transcript

8

which Respondent had already provided to Petitioner.  Id.

Petitioner filed his notice of motion for writ of error coram nobis on May 14, 2012.
Petitioner stated that he was deprived of his due process right to the effective assistance of
appellate counsel based on "counsel [sic] failure to brief [a] meritorious claim that prosecutor
vouched for [the] credibility of [a] witness during summation and other misconduct on
summation." Appellant's Mem. 1, Resp't's Ex. M.  Petitioner stated that the prosecutor "ridiculed
the defense, referring to the defense theories and witnesses as implode [sic] and combusting [sic]
an attempt by defense counsel to mislead." Id. at 4-5.  Petitioner also stated that the prosecutor
"vouched for the testimony of its cooperation witness as dead on accurate." Id. at 5.  Petitioner
stated that "not one time through the prosecutor [sic] summation did trial counsel object to
prosecutor misconduct on summation." Id. at 5.  Petitioner claimed that there "is no reasonable
basis for concluding that the [appellate] brief would suffer from having raised the ineffective
assistance of trial counsel [sic] for not objecting to the prosecutor [sic] summation conduct . . . ."
Id. at 6.

The Appellate Division, Second Department, denied Petitioner's application for a writ of
error coram nobis.  People v. Byrd, 99 AD3d 811 (2d Dept 2012).  The Court of Appeals denied
Petitioner's application for leave to appeal on January 16, 2013.  People v. Byrd, 20 NY3d 1009
(2013).

Respondent filed a letter motion in this Court on January 23, 2013, opposing Petitioner's
request to amend the habeas petition to include the ineffective assistance of appellate counsel
claim.  Resp't's Letter, Jan. 23, 2013, D.E. 24.  Respondent argued that the claim was untimely
and did not relate back to the original petition's claim regarding the ineffective assistance of trial
counsel.  Id.  Respondent also requested an extension of time to answer the amended petition

9

should this Court grant Petitioner permission to amend.  Id.  On February 5, 2013, this Court

denied Respondent's motion and allowed Petitioner to move to amend his petition no later than

February 15, 2013, which was thirty days after the Court of Appeals had denied Petitioner's

application for leave to appeal.  Order, Feb. 5, 2013, D.E. 25.  Thereafter, the Court granted

Petitioner's motion for an extension of time to move to file an amended petition.  Order, Feb. 11,

2013, D.E. 27.  The Court ordered that Petitioner move to amend by April 1, 2013.  Id.

Petitioner filed an amended petition on March 29, 2013, including his claim for ineffective

assistance of appellate counsel along with his original Massiah claim.  Am. Pet., Mar. 19, 2013,

D.E. 30.  Respondent filed an affidavit and memorandum in opposition to Petitioner's amended

petition on May 20, 2013.  Resp't's Am. Aff., May 20, 2013, D.E. 3l; Resp't's Am. Mem., May

20, 2013, D.E. 32.  Thereafter, the Court granted Petitioner an extension of time to file his reply.

Order, June 6, 2013, D.E. 34.  Petitioner filed an amended memorandum of law on July 8, 2013.

Pet'r's Am. Mem., July 8, 2013, D.E. 35.

## II. DISCUSSION

### A.    Legal Standard

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254.

#### 1.    Exhaustion

Under the AEDPA, all state remedies must be exhausted before a federal court may

consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see

also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, "'[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney Gen. of New York, 696 F.2d 186, 190-91 (2d Cir. 1982).  The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B) (i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'"  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the

court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the due process clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following:

> (a) reli[ed] on pertinent federal cases employing constitutional analysis, (b) reli[ed] on state cases employing constitutional analysis in like fact situations, (c) assert[ed] . . . the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) alleg[ed] . . . a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194. A claim that has not been "fairly presented" in state court is procedurally defaulted and is precluded from federal habeas review, unless Petitioner can show cause for default, and prejudice resulting from the alleged violation of federal law, or that a fundamental miscarriage of justice will occur if the claim is not considered. Coleman, 501 U.S. at 750; Galdamez v. Keane, 394 F.3d 68, 73-74 (2d Cir. 2005).

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282 (citing

Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979)).  If collateral relief is denied, the

petitioner may satisfy the exhaustion requirement by employing the state appellate procedures

available for review of such denial.  Id. at 283.  A petitioner "need not have invoked every

possible avenue of state court review."  Galdamez, 394 F.3d at 73.  Instead, a petitioner must

give the state courts "one full opportunity" to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process.  O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).

## 2.    Statute of Limitations

Generally, a state prisoner has one year from the date his or her conviction becomes final

to file a habeas corpus petition in federal court.  28 U.S.C. § 2244(d)(1).  This limitations period

ordinarily begins to run on "the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

The limitations period is tolled while "a properly filed application for State post-conviction or

other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28

U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show

that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on

time."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

## 3.    Stay and Amendment

A federal district court may not rule on a "mixed petition" containing exhausted and

unexhausted claims; in such cases, a district court should dismiss the petition without prejudice

and give state courts the opportunity to rule on the unexhausted claims.  See Rose v. Lundy, 455

U.S. 509, 518-19 (1982).  However, because the AEDPA one-year statute of limitations can

prevent a petitioner from returning to federal court for review of any of his or her claims, district

courts may stay mixed habeas petitions and hold them in abeyance while the petitioner returns to state court to exhaust the unexhausted claims. Rhines v. Weber, 544 U.S. 269, 275-76 (2005). A stay of a mixed petition "should be available only in limited circumstances." Id. at 277. Specifically, a stay is "only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his [or her] claims first in state court." Id. Additionally, "even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him [or her] a stay when his unexhausted claims are plainly meritless." Id.

   When a petition contains only exhausted claims, the petition is not "mixed" and is therefore not subject to the standard in Rhines. See, e.g., Hall v. Woods, No. 07 Civ. 9264 (PAC)(LMS), 2012 WL 2864505, at *5 (S.D.N.Y. July 12, 2012) (finding that Rhines did not apply to a request to stay a habeas petition that contained only exhausted claims); Mercado v. Lempke, No. 07 Civ. 9865 (KMK)(PED), 2009 WL 2482127, at *5 n.4 (S.D.N.Y. Aug. 13, 2009) ("[T]his Court does not have the authority to stay and abey Petitioner's habeas proceedings because Petitioner's habeas petition challenges only his underlying conviction, which had already been exhausted in state court at the time of his filing, and is therefore not a 'mixed petition' . . . ." (citing Rhines, 544 U.S. at 275-76)); accord Williams v. Sheahan, No. 11 Civ. 2435 (KAM), 2011 WL 2437496, at *1 (E.D.N.Y. June 15, 2011) ("Because petitioner did not raise the ineffective assistance of counsel claim in his instant petition, his petition only contains exhausted claims and is therefore not a 'mixed petition' under Rose v. Lundy, 455 U.S. 509 (1982), subject to the standards of Rhines v. Weber, 544 U.S. 269 (2005) . . . .").

   Before the Court addresses a motion for a stay, the petitioner must move to amend his or her habeas petition to include the new claim. See, e.g., Hall, 2012 WL 2864505, at *5 (denying habeas petitioner's request for a stay as premature because the petition was not "mixed" and

petitioner had not yet moved to amend his habeas petition to include the new claims); <u>Perez v. Greiner</u>, No. 00 Civ. 5504 (RCC)(KNF), 2004 WL 2937795, at *2 (S.D.N.Y. Dec. 17, 2004) (determining that a motion to amend, and not a motion for a stay, was applicable because the petition contained only exhausted claims).

The petitioner's motion to amend must satisfy Rule 15(a) of the Federal Rules of Civil Procedure.  28 U.S.C. § 2242; <u>Littlejohn v. Artuz</u>, 271 F.3d 360, 363 (2d Cir. 2001).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  Additionally, an amendment will "relate back" to the date of the original petition if the added claim shares a "common core of operative facts" with the claims in the original petition.  <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 659 (2005) ("[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." (citations omitted)).

### 4.   <u>Standard of Review</u>

After a petitioner has met the exhaustion and statute of limitations requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state court has decided a claim on the merits, the federal court must apply the AEDPA's deferential standard of review.  <u>See</u> <u>Torres v. Berbary</u>, 340 F.3d 63, 68 (2d Cir. 2003). Under the AEDPA,

15

> [a]n application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a
> decision that was based on an unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent "if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" Torres, 340 F.3d at 68 (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).

"[A]n unreasonable application of clearly established Supreme Court precedent occurs when a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Torres, 340 F.3d at 68 (internal quotation marks and citation omitted). The federal court must determine whether the state court's application of clearly established federal law was objectively unreasonable. Id. at 68-69 (citation omitted). In the Second Circuit, "the objectively unreasonable standard of § 2254(d)(1) means that the petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Id. (internal quotation marks and citations omitted).

Under the second prong of § 2254(d), the factual findings of state courts are presumed to be correct. Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). A rebuttal of this presumption must be established by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

16

**B.**     <u>Petitioner's Claims</u>

**1.**     <u>Petitioner's claim that his Sixth Amendment right to counsel was violated by</u>
<u>the admission of Preston Thomas's testimony at trial should be denied as</u>
<u>meritless.</u>

Petitioner claims that the state trial court admitted into evidence Preston Thomas's testimony in violation of Petitioner's Sixth Amendment right to counsel. Am. Pet. 18. Petitioner contends that the trial court erred in finding that Thomas was not an agent of law enforcement. <u>Id.</u> Petitioner argues that "the ultimate question for this Court in the present case is whether the police solicited the assistance of the informant Preston Thomas, making him their agent . . . ." <u>Id.</u> at 19. Petitioner argues that "nowhere in the case law is it held that information is 'solicited' only when the police have requested the specific information supplied by the informant." <u>Id.</u> at 20. Petitioner further argues that "the police did not have to ask Thomas for information 'specifically' about Appellant Carlton Byrd in order for Thomas to be properly deemed an agent of [the police] . . . ." <u>Id.</u> at 21. Petitioner states that the police asked Thomas for information regarding Mt. Vernon crimes, and, in response, Thomas provided information about Petitioner's statements. Petitioner also states that Thomas was asked by the police if he "had anything that would help [him]," (<u>Massiah</u> Hearing Transcript: 1554), which Petitioner claims indicated the police's attempt to request Thomas to seek more information. Pet'r's Am. Mem. 7. Petitioner contends that the police's questioning of Thomas constituted solicitation. Am. Pet. 20-21; Pet'r's Am. Mem. 6.

**a.**     <u>Petitioner has exhausted this claim.</u>

Petitioner has exhausted this claim because he fairly presented the factual and legal bases of this claim to the highest available state court, as required by <u>Klein v. Harris</u>, 667 F.2d 274,

17

282 (2d Cir. 1981), discussed supra.  Petitioner raised this claim on direct appeal to the Appellate

Division.  Resp't's Mem. Ex. H.[4]  Petitioner's arguments on appeal to the Appellate Division are

in essence the same as those made in his amended habeas petition.[5]  He therefore apprised the

state court of the federal nature of his claim.  Respondent does not suggest otherwise.  Resp't's

Am. Mem. 11-15.  Petitioner included this claim in his application for leave to appeal to the

Court of Appeals.  Resp't's Ex. K.  That application was denied on October 23, 2008.  People v.

Byrd, 11 NY3d 830 (2008).  I therefore conclude that Petitioner has exhausted this claim.

Petitioner filed a timely petition on September 14, 2009, for a writ of habeas corpus raising this

claim.  See 28 U.S.C. § 2244(d)(1); Pet., D.E. 1.

      b.      **Petitioner's claim should be denied as meritless.**

      Once the adversary judicial process has begun, the Sixth Amendment guarantees a

defendant the right to have counsel present at all critical stages of the criminal proceedings.

Montejo v. Louisiana, 556 U.S. 778, 786 (2009).  Interrogation by the State is considered a

critical stage.  Id.  A petitioner is denied the basic protections of the right to counsel when there

is "used against him [or her] at his [or her] trial evidence of his [or her] own incriminating

words, which federal agents had deliberately elicited from him [or her] after he [or she] had been

indicted and in the absence of his [or her] counsel."  Massiah v. United States, 377 U.S. 201, 206

(1984).

---

    [4] Petitioner was concerned that his claim was not preserved below, because his trial
counsel did not raise the claim before the trial court.  However, the appellate court ruled on this
claim on its merits and did not state that Petitioner's claim was unpreserved.  See People v. Byrd,
53 AD3d 622 (2d Dept 2008).

    [5] Petitioner attached to his amended petition copies of the pages from his appellate brief
making the same claim.  Therefore, the arguments in the amended petition and in Petitioner's
state appellate brief are virtually the same.  The only discrepancy is that Petitioner appears to
have omitted from his amended petition pages 19, 21, and 23, from his appellate brief.

The Massiah test applies in the jailhouse informant context.  United States v. Henry, 447 U.S. 264, 270-75 (1980).  This is because the "primary concern of the Massiah line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation."  Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).  The Sixth Amendment right to counsel is not violated, however, when by "luck or happenstance" the government obtains incriminating statements from the accused after the right to counsel has attached.  Id.  A petitioner does not make out a claim for violation of his or her Sixth Amendment right simply by showing that an informant, either through prior arrangement or voluntarily, reported the petitioner's incriminating statements to the police.  Id.  The defendant must show that the police and informant "took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks."  Id.  Admission of testimony provided by an informant who merely acts as a "listening post" does not violate an accused's Sixth Amendment right:

> Henry left open the question whether the Sixth Amendment forbids admission in evidence of an accused's statements to a jailhouse informant who was 'placed in close proximity but [made] no effort to stimulate conversations about the crime charged.'  [Henry, 447 U.S.] at 271 n.9, 100 S.Ct. at 2187, n.9.  Our review of the line of cases beginning with Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), shows that this question must, as the District Court properly decided, be answered negatively.

Kuhlmann, 477 U.S. at 456.

In Henry, the Supreme Court held that the defendant's Sixth Amendment right was violated by the use of testimony from a jailhouse informant who "stimulated" conversations with the defendant and "deliberately used his position to secure incriminating information from [the defendant] when counsel was not present."  Henry, 447 U.S. at 270.  However, in Kuhlmann, the Court held there was not a violation where the law enforcement officer instructed the jailhouse informant only to listen to the accused and the informant confirmed he only listened to the

19

accused's "spontaneous" and "unsolicited" statements. See Kuhlmann, 477 U.S. at 460.

Here, Petitioner's Sixth Amendment right to counsel was not violated by the admission of Thomas's testimony. The state trial court made the following findings of fact during the Massiah hearing: Thomas was originally questioned by law enforcement about Mount Vernon cases (unrelated to Petitioner's crime). Massiah Hearing Transcript: 1567. Thomas provided information about Petitioner's case and at no point did anyone ever instruct him to specifically obtain any information from Petitioner. Id. The state trial court also found "in no way" that Thomas's testimony was "incredible." Id. The state trial court's factual findings are presumed to be correct in the absence of clear and convincing evidence proving otherwise. 28 U.S.C. § 2254(e)(1); Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). Petitioner does not dispute the trial court's findings of fact.

After stating its findings of fact, the trial court summarized the applicable law, stating in part:

> The state of the law is that where an informer works independently of the prosecution, provides information on his own initiative, then the government's role is limited to the passive receipt of information. . . . Yet if the government is more than a passive auditor such as where it actively inveigles a co-defendant or fellow prisoner to inform as Massiah itself, the statements made to the informer should be suppressed on the ground that the government through its agent encroached on the defendant's 6th Amendment rights.

Massiah Hearing Transcript: 1565-66. Based on its findings of fact, the state trial court concluded that as a matter of law Thomas was not an agent of the government and that his testimony should be allowed. Id. at 1566-67.

The state trial court properly found that Thomas was not an agent of law enforcement at the time that he overheard Petitioner's admissions and statements about the trial. Thomas was not instructed by the police to obtain information from Petitioner. Id. at 1550-51, 1557, 1559.

20

On Monday, June 12, 2006, the police simply asked Thomas if he knew anything else he wanted

to share after the police asked him about the Mount Vernon cases.  Id. at 1549.  Petitioner's

argument that law enforcement did not need to "ask Thomas for information 'specifically' about

Appellant Carlton Byrd" in order for Thomas to be considered an agent of law enforcement is

inconsistent with Kuhlmann.  See United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997)

("[A]n informant becomes a government agent for purposes of Kuhlmann only when the

informant has been instructed by the police to get information about the particular defendant.")

(collecting cases from sister circuits), cert. denied, 522 U.S. 976 (1997).  Even where the police

has specifically asked an informant to listen for incriminating information from an accused, the

Supreme Court did not find a Sixth Amendment violation when the informant "only listened" to

the accused's "unsolicited" and "spontaneous" statements.  Kuhlmann, 477 U.S. at 460.  Thus, in

Whitten, the Second Circuit found that even where the government met with a jailhouse

informant and showed interest in an accused, the jailhouse informant was not an agent of law

enforcement if the government had not instructed the informant to obtain information from the

particular accused.  See United States v. Whitten, 610 F.3d 168, 193-94 (2d. Cir. 2010).  In the

instant case, even though law enforcement officers asked Thomas specifically about Petitioner

the day after Thomas's initial disclosure to law enforcement about Petitioner's statements,

Thomas did not become a government informant because he at no point elicited or was

instructed to obtain any statements from Petitioner.  See id.; see also United States v. Stevens, 83

F.3d 60, 64 (2d Cir. 1996) ("[T]he Massiah rule does not apply to statements made completely

voluntarily by an accused.").

Additionally, the fact that Thomas may have given information to law enforcement with

the expectation of receiving reduced time in jail or other benefit is immaterial to determining

21

whether he was acting as an agent of law enforcement.  See Birbal, 113 F.3d at 346 ("An accused's Sixth Amendment right is not violated when a jailmate simply acts in 'an entrepreneurial way' to seek information of potential value from an inmate."); Stevens, 83 F.3d at 64 ("To treat every inmate who hopes to cut some future deal as a 'government informant' is to extend the idea behind Massiah far beyond its natural reach, and that we are not willing to do.").

For the foregoing reasons, the Appellate Division properly found that Petitioner's claim on appeal was without merit.  Because Petitioner has failed to show that the state court's decision was "contrary to" or an "unreasonable application" of clearly established Supreme Court law, I conclude, and recommend that Your Honor should conclude, that this claim should be denied.

### 2.   Petitioner's ineffective assistance of trial counsel claim should be dismissed.

Petitioner's Amended Petition includes, as a sub-claim to the Massiah claim, an argument that trial counsel's failure to object to the admissibility of Thomas's testimony on Sixth Amendment grounds constituted ineffective assistance of counsel.  Am. Pet. 22.  Petitioner previously raised this exact sub-claim on direct appeal to the Appellate Division.  Resp't's Ex. H. 26.  It is uncertain whether Petitioner still seeks to raise this claim in his habeas petition, given that it was originally made on direct appeal only for the purpose of arguing that the Appellate Division should review the Massiah claim even though it had not been properly preserved by trial counsel.  The Appellate Division reviewed the Massiah claim without comment on this issue.  See People v. Byrd, 53 AD3d 622 (2d Dept 2008).  Furthermore, Petitioner did not mention the ineffective assistance of trial counsel claim in his amended memorandum of law filed in this Court.  See Pet'r's Am. Mem.  In any event, even if Petitioner intended to include the ineffective assistance of trial counsel claim in his habeas petition, this claim is procedurally defaulted and precluded from federal habeas review.

22

a.   <u>**Petitioner's ineffective assistance of trial counsel claim is procedurally**</u>

<u>**defaulted.**</u>

Petitioner's claim that he received ineffective assistance of trial counsel based on

counsel's failure to preserve his <u>Massiah</u> claim is procedurally defaulted and precluded from

federal review.  Although Petitioner raised his ineffective assistance of trial counsel claim in his

appellate brief on direct appeal, his letter application to the Court of Appeals abandoned this

claim.  Petitioner stated in footnote 3 in the application:

> The [Appellate] Court also rejected an "ineffective assistance of counsel"
> argument, which had only been offered with regard to the possibility that defense
> counsel had not adequately preserved Appellant's main argument.  This appears
> not to be of great importance, because, in any event, the Second Department did
> not hold that point to have been unpreserved. . . .

Resp't's Ex. K. 9.

Because Petitioner affirmatively abandoned this claim in his application seeking leave,

he is barred from seeking any additional review, and the issue should be deemed exhausted.  In

this situation, Petitioner no longer has "remedies available in the courts of the State" within the

meaning of 28 U.S.C. § 2254(b).  <u>See</u> <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2d Cir. 1991) ("For

exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to

a state court if it is clear that the state court would hold the claim procedurally barred.'" (quoting

<u>Harris v. Reed</u>, 489 U.S. 255, 263 n.9 (1989))).  Here, New York's procedural rules preclude

Petitioner from raising this claim to the Court of Appeals.  First, he cannot again seek leave to

appeal this claim in the Court of Appeals because he has already made the one direct appeal to

which he is entitled.  <u>See</u> N.Y. Court Rules § 500.10(a).  Second, Petitioner cannot seek

collateral review of this claim, having already raised this claim on direct appeal and received a

judgment on the merits.  <u>See</u> N.Y. Crim. Proc. L. § 440.10(2)(a).  Thus, this claim should be

deemed exhausted, because Petitioner has no more available remedies in state court. See Grey,

933 F.2d at 120.

Because this claim was procedurally defaulted in state court, this Court must also deem

the claim procedurally defaulted, unless Petitioner can demonstrate cause for the procedural

default and prejudice resulting therefrom. See Coleman v. Thompson, 501 U.S. 722, 735 n.1

(1991); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). Petitioner has not provided a showing

of cause or prejudice. The only explanation in the record for why this claim was not made in the

application for leave to appeal to the Court of Appeals was in footnote 3 of the application, and

the explanation does not demonstrate either cause or prejudice sufficient to allow review in this

Court. Furthermore, Petitioner has not made a showing of "actual innocence" so as to warrant

the fundamental-miscarriage-of-justice exception. See Aparicio, 269 F.3d at 90. Thus, I

conclude, and recommend that Your Honor should conclude, that the ineffective assistance of

trial counsel claim should be dismissed. See id.

3. **Petitioner's ineffective assistance of appellate counsel claim should be denied as meritless.**

Petitioner claims in his amended petition that he was deprived of his due process right to

the effective assistance of counsel based on appellate counsel's failure to "brief the meritorious

claim that prosecutor vouched for [sic] credibility of witness during summation and other

misconduct during summations." Am. Pet. 8. Petitioner states that the Assistant District

Attorney

> emphasized the importance of Thoma's [sic] testimony by discussing it right at
> the very beginning of his summation stating that the truth in this case was best
> summarized by defendant in his own words [sic] a bit later the A.D.A. returned to
> Thomas's testimony and vouched for it as dead on accurate [sic] trial counsel
> failed to object to prosecutor vouching for her witness and other misconduct.

24

Id. at 13.  Petitioner argues that the prosecutor's conduct was "all the more devastating considering . . . this was a case where there would eventually be a clear split among the eyewitness [sic] to the shooting of Forenman [sic]. . . ."  Id. at 14.  Petitioner claims that Thomas's testimony was "the most damaging" testimony in the trial and that it was "clear that trial counsel failed to object to prosecutor vouching."  Id.  Petitioner argues that appellate counsel's failure to brief the claim of prosecutor vouching amounted to the ineffective assistance of counsel.  Id.

Although Petitioner challenges "other misconduct" by the prosecutor, Petitioner does not specify in his amended petition or amended memorandum of law what "other misconduct" he contests in addition to the prosecutor's alleged vouching for Thomas's testimony.  Petitioner had included in his writ of error coram nobis submitted in state appellate court an argument that it was improper for the prosecutor to "ridicule[] the defense, referring to the defense theories and witness as implode [sic] and combusting [sic] an attempt by defense counsel to mislead."  Appellant's Mem. 4-5, Resp't's Ex. M.  The Court will address Petitioner's challenge to both the allegation that the prosecutor improperly vouched for the credibility of Thomas's testimony and the argument that the prosecutor's statement about the defense's attempt to mislead was improper.

     a.     **Petitioner's ineffective assistance of appellate counsel claim has been exhausted.**

Petitioner raised this claim in his application for a writ of error coram nobis filed in the Appellate Division on May 14, 2012.  Appellant's Mem., Resp't's Ex. M.  Petitioner stated that his challenge to the prosecutor's summation was unpreserved because trial counsel failed to

25

preserve the claim for review by making a timely objection. <u>Id.</u> at 6.  Petitioner argued that this was substantial error that irreparably prejudiced his right to a fair trial. <u>Id.</u> at 7.  Petitioner argued that he received ineffective assistance of appellate counsel based on counsel's failure to raise this issue on appeal. <u>See id.</u> at 5-7.  The Appellate Division denied Petitioner's application on the grounds that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." <u>People v. Byrd</u>, 99 AD3d 811 (2d Dept 2012).  On January 16, 2013, the Court of Appeals denied Petitioner's application for leave to appeal. <u>People v. Byrd</u>, 20 NY3d 1009 (2013).  Thus, Petitioner has given the state courts "one full opportunity" to review this claim. <u>See O'Sullivan</u>, 526 U.S. at 845.  Having "fairly presented" his claim and received a final judgment by the state court, Petitioner has exhausted this claim for the purposes of habeas review.

　　　　With regard to the statute of limitations, the original habeas petition was timely filed on September 14, 2009, before the one-year deadline on January 21, 2010.  However, Petitioner's application for a writ of error <u>coram</u> <u>nobis</u> was filed on May 14, 2012, over two years past the one-year deadline.  Appellant's Aff., May 14, 2012, Resp't's Ex. M.  Respondent is correct in arguing that this claim was a new claim that was not previously asserted in, and did not relate back to, the original habeas petition.  Resp't's Letter, Oct. 19, 2011, D.E. 20.  However, prior to the expiration of the one-year limit on January 21, 2010, Petitioner had sought a stay by letter dated December 13, 2009, to exhaust this claim.  On September 9, 2011, the Court ordered Petitioner to provide more details, within thirty days, as to the claims that Petitioner sought to exhaust in state court.  Order, Sept. 9, 2011, D.E. 17.  Petitioner complied and submitted on October 5, 2011, details regarding, <u>inter</u> <u>alia</u>, his claim of ineffective assistance of appellate counsel.  The Court's Feb. 17, 2012, Order granted Petitioner's request for a stay so that

26

Petitioner could exhaust his ineffective assistance of appellate counsel claim, with the limitation that Petitioner had to file his writ of error <u>coram</u> <u>nobis</u> petition in state court within thirty days of the Order, by March 19, 2012. Although not expressly articulated in the Feb. 17, 2012, Order, the Court had effectively construed Petitioner's request for a stay on Dec. 13, 2009, as both a motion to amend and a motion for a stay. <u>See</u> <u>Perez v. Greiner</u>, No. 00 Civ. 5504 (RCC)(KNF), 2004 WL 2937795, at *2 n.1 (S.D.N.Y. Dec. 17, 2004) ("Although petitioner has not moved to amend the petition, the Court construes his <u>pro</u> <u>se</u> submissions liberally and 'interpret[s] them to raise the strongest arguments they suggest.'" (citing <u>Wright v. Comm'r of Internal Revenue</u>, 381 F.3d 41, 44 (2d Cir. 2004)). Petitioner's ineffective assistance of appellate counsel claim is therefore not time-barred, having been asserted in Petitioner's timely December 13, 2009, motion to amend.

By letter dated January 23, 2013, Respondent notified the Court that Petitioner had received a final judgment on his writ of error <u>coram</u> <u>nobis</u> petition, and Respondent filed an opposition to Petitioner's motion to add the ineffective assistance of counsel claim to his habeas petition. Resp't's Letter, Jan. 23, 2013, D.E. 24. Respondent argued that the claim was untimely and did not relate back to the petition filed on September 14, 2009. <u>Id.</u> On February 5, 2013, this Court denied Respondent's motion and stated that Petitioner's ineffective assistance of appellate counsel claim was timely based on the Court's February 17, 2012, Order. Order, Feb. 5, 2013, D.E. 25.

This Court did not have access to Petitioner's state court filing when the February 5, 2013, Order was issued. Based on the Court's review of Petitioner's state court filing provided in Exhibit M of Respondent's May 20, 2013, Amended Memorandum of Law, D.E. 32, it is now apparent that Petitioner did not comply with the Court's February 17, 2012, Order, requiring

Petitioner to file his writ of error <u>coram</u> <u>nobis</u> petition within thirty days of the date of the Order. Petitioner filed his writ of error <u>coram</u> <u>nobis</u> petition in state court on May 14, 2012.  Resp't's Am. Mem. Ex. M.  Respondent's January 23, 2013, letter to the Court did not identify Petitioner's failure to comply with the Court's Feb. 17, 2012, Order.  Resp't's Letter, Jan. 23, 2013, D.E. 24.  The Court may vacate the stay <u>nunc pro tunc</u>, as of February 17, 2014, based on Petitioner's failure to comply with the Court's Order to stay the petition.  <u>See</u> <u>Zarvela v. Artuz</u>, 254 F.3d 374, 381 (2d Cir. 2001) (instructing that, where a petitioner does not comply with the conditions of a stay, the federal district court may vacate the stay <u>nunc pro tunc</u> as of the date that the stay was entered).  If the Court does so, Petitioner's claim would be time-barred. Petitioner filed his habeas petition on September 14, 2009, which left him 129 days before the one-year deadline on January 21, 2010.  If the stay is vacated as of the date it was entered on February 17, 2012, then eighty-seven days would have elapsed from that date until Petitioner filed his <u>coram</u> <u>nobis</u> petition on May 14, 2012.  From May 14, 2012, until there was a final judgment on the <u>coram</u> <u>nobis</u> petition on January 16, 2013, the statute of limitations was tolled. <u>See</u> 28 U.S.C. § 2244(d)(2).  Between January 16, 2013, and the date on which Petitioner returned to federal court on March 29, 2013, seventy-two days elapsed.  Because a total of 159 days (eighty-seven days plus seventy-two days) would have counted towards the one-year limitation period, and Petitioner had only 129 days left to assert his federal habeas claims, Petitioner would have surpassed his one-year limitation by thirty days.

However, some courts in this district have reasoned that, "[g]iven the absence of an explicit warning to Petitioner that the stay could be vacated <u>nunc pro tunc</u> if he failed to return to court in time, and Petitioner's <u>pro se</u> status, one might argue that the stay should be considered as having been vacated only upon Petitioner's failure to comply with its condition, and not

28

retroactively, with the limitations period being tolled until the stay was actually vacated."

Johnson v. Girdich, No. 03 Civ. 5086 (LBS), 2005 WL 427576, at *5 (S.D.N.Y. Feb. 23, 2005);

see also Taylor v. Brown, No. 06 Civ. 7675 (LTS)(KNF), 2009 WL 400365, at *3 (S.D.N.Y. Jan.

30, 2009), adopted by 2009 WL 2448587 (S.D.N.Y. Aug. 11, 2009). Because this Court's Feb.

17, 2012, Order did not warn Petitioner that the stay would be vacated as of the date of the

Order, the limitations period should be tolled until the date that Petitioner failed to comply,

which was thirty days after he was ordered to file his writ of error coram nobis petition in state

court. Under this more generous calculation, Petitioner's claim is timely, because the stay would

be lifted as of March 19, 2012. Between March 19, 2012, and May 14, 2014, the date that

Petitioner actually filed his state coram nobis petition, only fifty-four days had elapsed. Fifty-

four days added to the seventy-two days it took Petitioner to return to federal court after

receiving a final judgment amounts to 126 days, which is three days less than the 129 days that

Petitioner had remaining in his one-year limitation to file his habeas claims. Thus, the Court

finds that Petitioner's claim is timely.

### b.   Petitioner's claim should be denied as meritless.

A claim of ineffective assistance of appellate counsel demands the same Strickland

analysis as that used for trial counsel. See e.g. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.

1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992), cert. denied, 508 U.S. 912 (1993).

Petitioner must show that appellate counsel's performance "fell below an objective standard of

reasonableness" and that there is a "reasonable probability" that, but for counsel's error, the

outcome would have been different. Strickland v. Washington, 466 U.S. 669, 686-88 (1984).

To meet his or her burden on the first prong, a petitioner must establish that the attorney's

performance was deficient. However, a "fair assessment of attorney performance requires that

every effort be made to eliminate the distorting effects of hindsight." Rompilla v. Beard, 545

U.S. 374, 408 (2005) (internal quotation marks and citation omitted).  "Constitutionally effective

counsel embraces a 'wide range of professionally competent assistance,' and[, therefore,] 'counsel

is strongly presumed to have rendered adequate assistance and made all significant decisions in

the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir.

2005) (quoting Strickland, 466 U.S. at 690), cert. denied, 546 U.S. 1184 (2006).  Further,

"strategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable." Strickland, 466 U.S. at 690.

   In the habeas context, "even a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).  Both

the AEDPA and Strickland standards are "highly deferential," and "when the two apply in

tandem, review is 'doubly' so." Id. at 788. (citations omitted).  "The question is whether there is

any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

   With regard to the issue of prosecutorial misconduct, a prosecutor is generally allowed

wide latitude in his or her closing arguments.  See United States v. Tocco, 135 F.3d 116, 130 (2d

Cir. 1998) ("The prosecution and the defense are generally entitled to wide latitude during

closing arguments, so long as they do not misstate the evidence.").  "Statements during

summation are permissible if they constitute a fair comment on the evidence at trial and a

reasonable inference therefrom, or a fair response to remarks made by the defense counsel

during summation." Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (citations and

internal quotation marks omitted).  An improper summation by the prosecutor requires a new

trial "only where the improper statements cause 'substantial prejudice' to the defendant." United

States v. Eltayib, 88 F.3d 157, 172 (2d Cir. 1996) (citations omitted); see United States v.

Nersesian, 824 F.2d 1294, 1327 (2d Cir. 1987) ("Whether a prosecutor's improper statement during summation results in a denial of due process depends upon whether the improper statement causes substantial prejudice to the defendant." (citations omitted)).

Habeas relief is justified only when the prosecutor's improper statements "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974). Petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). "Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." Id.

The prosecutor's remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." United States v. Young, 470 U.S. 1, 12 (1985). The Second Circuit considers the following non-exhaustive factors in determining whether prosecutorial misconduct during summation resulted in substantial or actual prejudice to a criminal defendant: "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any actual prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." Bentley, 41 F.3d at 824 (citations omitted) (listing the three factors in determining actual prejudice); Nersesian, 824 F.2d at 1329 (identifying the three factors for determining substantial prejudice); see also Osorio v. Conway, 496 F. Supp. 2d 285, 301 (S.D.N.Y. 2007) (applying the three-factor test in determining whether the prosecutor's comments were so prejudicial as to deprive defendant of a fair trial). "It is strictly 'improper for a prosecutor to interject personal beliefs into a summation.'" United States

v. Eltayib, 88 F.3d 157, 172 (2d Cir. 1996) (quoting Nersesian, 824 F.2d at 1328).  A prosecutor may not "express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."  United States v. Modica, 663 F.2d 1173, 1178 (2d Cir. 1981) (quoting ABA Standards for Criminal Justice, Standard 3-5.8(b) (1980)).  However, "[p]rosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility."  United States v. Perez, 114 F.3d 204, 210 (2d. Cir. 1998); see also Shariff v. Artuz, No. 97 CIV. 2882 (RCC JCF), 2001 WL 135763, at *8 (S.D.N.Y. Feb. 16, 2001) ("Although the government may not vouch for a witness's credibility, it may respond to an argument that impugns the government's integrity or the integrity of the case." (citing United States v. Thai, 29 F.3d 785, 806-07 (2d Cir.1994))).

In this instant case, Petitioner's claim for prosecutorial misconduct was not preserved at trial.  Additionally, appellate counsel would not have succeeded in arguing that trial counsel was ineffective for failing to preserve the claim because the claim, at bottom, is meritless.

First, the prosecutor's comments were not improper.  Petitioner claims that it was improper for the prosecutor to state that the defense witnesses' testimonies "implode[ed] and combust[ed]" defense counsel's attempt to confuse the jury.  At summation, the prosecutor stated:

> Let's talk about the defense witnesses.  As a group they implode, they completely combust.  It is a clear attempt by the defense to confuse and in [defense counsel] Mr. Pickelle's words to throw at you anyone from Cliff to caravan them up here to White Plains and confuse the issue because they can't even get not inconsequential things like how many cars are parked on Spruce, they can't even get who's there at the time of the shooting right.

T: 1869.  Following the statement, the prosecutor discussed each defense witness's testimony and the inconsistencies therein.  See T: 1870-72.  The prosecutor did not interject her personal beliefs

or misstate the evidence. Instead, she presented an argument that she supported with the witnesses' testimonies given at trial. This was not prosecutorial misconduct. See, e.g., Eltayib, 88 F.3d at 173 (finding no improper vouching where the prosecutor's statements "relied on evidence in the case to corroborate [a witness's] testimony"); Graves v. Cunningham, No. 09 Civ. 5837, 2010 WL 2942614, at *20 (S.D.N.Y. May 26, 2010) (finding no misconduct where prosecutor "was not expressing his personal belief" but was "merely presenting arguments to the jury" as to why it should find a witness credible); Osorio, 496 F. Supp. 2d at 301 (finding no misconduct where the prosecutor's comment was "based on inferences fairly drawn from the evidence presented at trial"). Furthermore, "a prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation." United States v. Jaswal, 47 F.3d 539, 544 (2d Cir. 1995) (finding no prosecutorial misconduct where prosecutor characterized defendant's case as a "fairy tale").

The prosecutor also did not improperly vouch for the credibility of Thomas's testimony. Petitioner claims that it was improper for the prosecutor to vouch for the credibility of Thomas's testimony by mentioning the testimony early on in the summation and by later stating that the testimony was "dead on accurate." In her closing argument, the prosecutor stated, "It is not I think Mr. Pickelle used in his summation oh, Preston Thomas was real cute and cunning. It was anything but cute. It was dead on accurate." T: 1867. The prosecutor then proceeded to rehabilitate her witnesses' credibility by explaining the situation in which Preston Thomas overheard Petitioner's statements. T: 1867-68.

The prosecutor made this statement in response to defense counsel's attack on the credibility of Preston Thomas. Defense counsel had called Thomas a "career criminal" and "con man" during the defense closing statement. T: 1828. He also stated:

[I]t is interesting to me how this career criminal and con man comes out of nowhere after this trial has begun and he just happens to be in the same van as this guy.  He happens to be in the same bull pen.  He happens to be coming to court all the time when this guy is.  And he happens to hear exactly what the People need to fill in the gaps in their case.  T: 1829-30.

. . .

Let's look at the cute and cunning way he does it.  This is no amateur, folks.  This is a real life con man.  T: 1830.

. . .

I suggest to you the mere fact that [prosecutor] Ms. O'Connor brought this bum into this courtroom, this parasite, it shows you how desperate they are that she has the chutzpa to ask you to believe him. . . .  This is the old ploy.  Bail out the prosecution by any means necessary.  T: 1834.

It is well-settled in the Second Circuit that "[p]rosecutors have greater leeway in commenting on the credibility of their witnesses when the defense has attacked that credibility." Graves, 2010 WL 2942614, at *20-21 (collecting cases).  Here, the prosecutor's statement about Thomas's testimony was a "fair response to remarks made by the defense counsel during summation." Osorio, 496 F. Supp. 2d at 301.  The prosecutor merely defended the credibility of Thomas's testimony after it was attacked by defense counsel.  This does not constitute prosecutorial misconduct.  See, e.g., United States v. Germosen, 139 F.3d 120, 128-29 (2d Cir. 1998) (finding it was not improper for prosecutor to comment on witnesses' credibility after defense summation attacked witnesses' credibility); Eltayib, 88 F.3d at 173 ("[T]he defendants' lawyers specifically attacked Van Salisbury's credibility and veracity in their summations.  Since this 'impugn[ed] the integrity of [the government's] case,' . . . the prosecutor was entitled to respond with counter-arguments."); Graves, 2010 WL 2942614, at *20 (finding no misconduct where prosecutor "responded to defense counsel's argument that [the witness] S.O.'s testimony was inconsistent with the testimony of the other witnesses, as well as illogical, and that her prior

34

criminal history was further proof that her testimony could not be believed" (internal citations omitted)). Finally, although Petitioner appears to be arguing that it was improper for the prosecutor to discuss Thomas's testimony at the beginning of the prosecutor's summation, the Court is not aware of legal authority holding that a prosecutor's discussion of a witness's testimony at an earlier point, as opposed to a later point, in summation is not within the "wide latitude" a prosecutor is allowed in his or her closing statement.

Even if the prosecutor's comments were improper (which they were not), they did not cause substantial or actual prejudice to Petitioner sufficient to have deprived him of a fair trial. First, the prosecutor's two comments challenged by the petitioner were not severe. The two comments were minor in the context of a summation spanning thirty-three pages (T: 1845-78) and a lengthy trial spanning fourteen days. See Tankleff v. Senkowski, 135 F.3d 235, 253 (stating that a prosecutor's improper comments during summation must be "so numerous and, in combination, so prejudicial" for a new trial to be required); see, e.g., Bentley, 41 F.3d at 825 (finding that there was no actual prejudice to the petitioner where prosecutor's summation comments were "brief and isolated"); Charlemagne v. Goord, No. 05 Civ. 9890 (DAB)(HBP), 2008 WL 2971768, at *24 (S.D.N.Y. June 30, 2008) (finding that the prosecutor's conduct was not severe where the comments "were isolated statements in a lengthy summation"); Osorio, 496 F. Supp. 2d at 302 (finding that the prosecutor's statements were not severe where they were a "minor part of long trial and were isolated incidents that did not undermine the overall fairness of the trial").

Second, the court had instructed the jurors that they alone were judges of the facts of the case and that it was the jurors' own recollections and understanding of the evidence that controlled regardless of what the lawyers would say. T: 1787. This factor weighs against a

finding of substantial prejudice.  See, e.g., Charlemagne, 2008 WL 2971768, at *24 (finding that

the petitioner was not denied a fair trial where " . . . the Trial Judge instructed the jury that only

its recollection of the evidence controlled and that it could accept or reject counsel's arguments

based on the logical connection between the arguments and the evidence in the record" (citation

omitted)).  A jury is "presumed to follow their instructions."  Id.  (citing Richardson v. Marsh,

481 U.S. 200, 211 (1987)).

        Finally, Petitioner failed to demonstrate that he would not have been convicted absent the

prosecutor's statements at summation.  Even if the prosecutor's two comments that Petitioner

contests were removed from the summation, the prosecutor's arguments following those

comments would still have been allowed.  Petitioner does not challenge the rest of the

prosecutor's summation involving arguments based on evidence that calls into question the

testimony of the defense witnesses and that defend the credibility of Thomas's testimony.

Instead, Petitioner argues that "[w]ithout Thoma's [sic] testimony that appellant himself admitted

his guilt in the courthouse holding cell it would have been difficult for the jury to find appellant

guilty beyond a reasonable doubt given the conflicting account from eyewitnesses."  Am Pet. 14.

However, the issue at hand in this claim is not whether Thomas's testimony was so prejudicial as

to deny Petitioner of a fair trial.  This Court finds that Thomas's testimony was properly

admitted, as discussed supra.  The issue here is whether Petitioner has demonstrated that absent

the prosecutor's two isolated comments, Petitioner would have been found not guilty.  See

United States v. Elias, 285 F.3d 183, 192 (2d Cir. 2002) (stating that the defendant must

establish that "absent the isolated impropriety of the prosecutor in rebuttal summation (taken in

the context of the entire trial), [defendant] would not have been convicted").  Petitioner has not

met this burden.  Given the isolated nature of the two comments, this Court is not convinced that

Petitioner would not have been convicted absent the comments.

Because Petitioner's claim was, at bottom, meritless, the Petitioner failed to show that he received ineffective assistance of appellate counsel.  "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled."  Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) (quoting Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994)); see United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[F]ailure to make a meritless argument does not rise to the level of ineffective assistance[.]").  Even if the prosecutor's statements had been improper, Petitioner's ineffective assistance claim would still fail.  For the same reason that Petitioner failed to demonstrate actual prejudice, he failed to show that there was a "reasonable probability" that but for trial counsel's failure to object to the prosecutor's comments "the result of the proceedings would have been different."  Strickland, 466 U.S. at 694.  Further, trial counsel did object to the prosecutor's use of a chart during summation (T: 1844), suggesting that trial counsel's failure to object to the challenged statements was strategic and therefore not "objectively unreasonable."  See, e.g., Charlemagne, 2008 WL 2971768, at *26 ("Trial counsel objected to the prosecutor's summation on six other occasions, suggesting that his failure to object to the comments petitioner now challenges was driven by trial strategy that fell within the 'wide range of professionally competent assistance." (citing Strickland, 466 U.S. at 690)); Nova v. Ercole, 06 CIV. 562 (NRB), 2007 WL 1280635, at *8 (S.D.N.Y. Apr. 30, 2007) (finding that petitioner was not denied effective assistance where "[d]efense counsel did make objections that were sustained during other parts of the summation, suggesting his choice not to object was driven by strategy").  Thus, Petitioner failed to demonstrate that his appellate counsel's conduct was deficient under Strickland's deferential standard.

37

Based on the reasons explained above, the state court's determination was not an "unreasonable application" of federal law.  See Harrington, 131 S. Ct. at 788.  Therefore, I recommend that this claim should be denied as meritless.

### III.  CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the instant petition should be dismissed.

### IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Nelson S. Román, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

Dated: July 11, 2014
        White Plains, NY

                                        Respectfully submitted,


                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York


A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Nelson S. Román, U.S.D.J.

Carlton Byrd
06-A-4865
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-0010

John M. Collins
Assistant District Attorney
County Courthouse
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601